# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 96-60031-08** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **ISAAC JEROME HAYES** | * | **MAGISTRATE JUDGE HILL** |

## REVISED REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2255, filed on behalf of petitioner, Isaac Jerome Hayes. (rec. doc. 926). The Government has filed an Answer and Memorandum in Support of it's Answer, to which petitioner has filed a reply. (rec. docs. 936 and 938). For the following reasons, I recommend that the petition be **DENIED AND DISMISSED WITH PREJUDICE**. Because the undersigned was able to reach this conclusion based on the record, transcripts and briefs filed by the parties, no evidentiary hearing is necessary.[1]

## BACKGROUND

By Report and Recommendation dated August 18, 2005 (rec. doc. 957), the undersigned recommended that the petition be denied and dismissed with prejudice. Thereafter, petitioner filed objections to the Report and Recommendation. (rec. doc. 960). By Order dated January 3, 2006, Judge Doherty referred the matter back to the

---

[1]No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record. *U. S. v. Green,* 882 F.2d 999, 1008 (5th Cir.1989).

undersigned for consideration of the effect of the Supreme Court decision in *Ray v. United States*, 107 S.Ct. 2093 (1987), and to thereafter issue another Report and Recommendation. (rec. doc. 969). This Revised Report and Recommendation follows.

On August 13, 1996, petitioner was indicted for the following crimes: conspiracy to possess with intent to distribute over 50 kilograms of cocaine base or "crack", beginning from on or about January 1, 1989 until on or about January 1, 1996, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A) and § 846 (Count 1); possession with intent to distribute over 50 grams, that is, approximately 80 grams of cocaine base, on or about February 20, 1993, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A) (Count 2); and carrying a firearm during and in relation to a drug trafficking offense, on or about February 20, 1993, in violation of 18 U.S.C. § 924(c)(1) and (2) (Count 3).[2] (rec. doc. 1).

Trial by jury began on July 23, 2001. Government witness and co-conspirator Norwood Johnson testified that he and petitioner were "business partners" and that they sold two kilograms of cocaine base (crack) once a week for a two-year period beginning at the end of 1992 through 1994. (tr. vol. 1, p. 12, 15). Government witness Reginald Bernard testified that he sold crack cocaine with petitioner and that they had distributed one to two kilograms once or twice a week for over a year. (tr. vol. 1, p. 43-45). Government witness and co-conspirator Dion Eaglin testified that petitioner was involved in the conspiracy in 1993 and 1994, and that during that time he witnessed petitioner

---

[2]Petitioner was also indicted for possession with intent to distribute 252 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A) (Count 4); possession with intent to distribute 1,008 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A) (Count 5); and distribution of 84 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A) (Count 15). (rec. doc. 1). However, prior to trial, the government dismissed these counts. (rec. doc. 858).

cooking two to three kilograms of crack cocaine approximately seven times. (tr. vol. 2, p. 150, 153).

At the close of the government's case, defense counsel moved for acquittal arguing that the government's evidence was insufficient to support a guilty verdict. The motion was denied. The court noted that the issue of guilt required a determination of the credibility of the witnesses, which was the province of the jury. (tr. vol. 3, p. 292-293).

Following closing arguments, the court became concerned with the wording of the jury verdict form in light of the United States Supreme Court's then recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000). After discussion with counsel, it was decided that in order to try to avoid any *Apprendi* problems, the jury verdict form would ask the jury to indicate not only whether the defendant was guilty of the conspiracy count alleged in the indictment, but also whether the jury found that the conspiracy involved the possession with intent to distribute in excess of 50 grams of cocaine base, a finding the court believed necessary under *Apprendi* for the application of the increased penalties set forth in § 841(b)(1)(A) as sought by the government. A similar additional question was posed on the verdict form with respect to Count 2, the possession with intent to distribute count. (tr. vol. 3, p. 267-270, 319-327; rec. doc. 880). The court reasoned that although the indictment alleged that the conspiracy involved over fifty *kilograms* of cocaine base, the underlying offense on which the conspiracy "key[s] off" only required that the conspirators conspired to possess with the intent to distribute "over 50 *grams* ...." (emphasis added). Additionally, the court noted that the Fifth Circuit case

law interpreting *Apprendi* indicated that the amount which needed to be found by the jury for application of the increased penalties was that listed in the statute, that is, an amount in excess of fifty *grams*. (tr. vol. 3, p. 322-323). Defense counsel objected to both the jury verdict form and the jury instruction, which instructed the jury that it was necessary that the government prove beyond a reasonable doubt that the conspiracy involved in excess of fifty *grams*. (tr. vol. 3, p. 326).

The jury verdict form was worded in pertinent part as follows:

1. How do you find the defendant on the charge alleged in Count 1?

_____   Guilty
_____   Not Guilty

If you found the defendant guilty on question 1, answer the following; if not, go to question 2.

.   Do you find the conspiracy involved possession with the intent to distribute in excess of 50 grams of cocaine base?
_____   Yes
_____   No

On July 26, 2001, the jury found petitioner guilty on Counts 1 and 2. In so finding, the jury foreperson placed a "check" on the jury verdict form on the line corresponding to a guilty verdict on the "charge alleged in Count 1" of the indictment, and also placed a "check" on the line indicating that the conspiracy involved "in excess of 50 grams of cocaine base ...." (rec. doc. 880). The jury found petitioner not guilty on Count 3. (rec. doc. 880).

Petitioner filed a written Motion for Judgment of Acquittal arguing that the evidence was insufficient to support petitioner's conspiracy conviction, and more specifically, that there was insufficient evidence that petitioner "made an agreement with any of the co-defendants or any other person to possess with intent to distribute over fifty (50) kilograms of cocain [sic] base as alleged in Count 1 of the indictment ...."(rec. doc. 884). That Motion was denied by Memorandum Ruling dated September 20, 2001. In denying the Motion, the Court cited the above summarized testimony of Norwood Johnson, Reginald Bernard and Dion Eaglin. (rec. doc. 895).

After the jury rendered its verdict, the court asked the government if it was going to present testimony at the sentencing hearing regarding the quantity of drugs for which petitioner should be held accountable under the Sentencing Guidelines. The government replied that it would rely solely on the testimony given at trial as to the quantity of drugs involved in the conspiracy, namely, the testimony of Norwood Johnson, Reginald Bernard and Dion Eaglin, and that it would not seek to have petitioner sentenced based on any additional amounts. (tr. vol. 4, p. 370).

A pre-sentence investigation report ("PSI") was prepared by the United States Probation Office. Based on investigative reports and the trial testimony indicating that petitioner conspired to possess with intent to distribute one to two kilograms of crack cocaine, once or twice a week, for over one year, the probation officer found that petitioner was accountable for at least 52 kilograms of cocaine base. The Sentencing Guidelines prescribed a base offense level of 38 for any amount of crack cocaine in

excess of 1.5 kilograms. (PSI ¶ 24). The report also recommended a two point weapons enhancement because a firearm was present in connection with the February 20, 1993 possession with intent to distribute conviction. (PSI ¶ 25). Thus, petitioner's total offense level was 40. This offense level and petitioner's Category II criminal history resulted in a sentencing range of 324-405 months imprisonment. (PSI ¶ 67).

Defense counsel objected to the finding that petitioner was responsible for more than 52 kilograms of cocaine base and the two level increase due to the presence of a firearm in connection with the February 20, 1993 incident. Petitioner argued that the trial testimony of Norwood Johnson, Reginald Bernard and Dion Eaglin was not credible, not corroborated and biased. With respect to the firearm enhancement, petitioner argued that since he had been acquitted on Count 3 of the indictment, carrying a firearm during and in relation to the February 20, 1993 drug trafficking offense, that he therefore could not receive a sentence enhancement on that basis.

Petitioner appeared for sentencing on March 11, 2002. At that time, the court overruled petitioner's objections to the PSI. With respect to the amount of drugs involved in the conspiracy, the court expressly stated that the quantity for which petitioner was responsible was "taken from the trial testimony itself." Moreover, because the relevant quantity for guidelines purposes was a finding of 1.5 kilograms, the court found that at least this amount was attributable to petitioner. (sent. tr. p. 7-8). With respect to the firearm enhancement, the court noted that under the Guidelines an enhancement was

proper if a weapon is present during a drug crime, "unless it is clearly impossible that the weapon was connected with the offense." Thus, because a weapon was present on February 20, 1993 and because petitioner had admitted to officers that he was aware the handgun was present in the vehicle, and because the standard at sentencing was different than that required for a conviction under 18 U.S.C. § 924(c), the court applied the enhancement despite the fact that petitioner had been acquitted of the substantive offense. (sent. tr. p. 8-9).

Petitioner was sentenced to serve 372 months imprisonment on Counts 1 and 2, followed by a five-year term of supervised release. The sentences on the two counts were to run concurrently. Petitioner was also assessed $100, fifty dollars on each of the counts. (rec. doc. 917). Defense counsel objected to this sentence, again arguing that the indictment charged a conspiracy to possess with intent to distribute 50 *kilograms* and that the jury charge and jury interrogatory had allowed the jury to convict on a finding of only 50 *grams*, rather than 50 *kilograms*.

In over-ruling this objection, the court verified that the indictment had been read to the jury and that a copy of the indictment alleging 50 kilograms had been sent with the jury for its consideration during deliberations. The court also noted that the jury verdict form indicated that petitioner had been found guilty on the charge alleged in Count 1, the conspiracy charge. Finally, the court noted that there was no violation of *Apprendi* because petitioner had not been sentenced to the statutory maximum of life. (sent. tr. p.

20-25). Petitioner's Judgment of Conviction was signed by the court on March 14, 2002 and entered on this court's docket on March 18, 2002. (rec. doc. 912).

Petitioner's conviction and sentence were affirmed by the United States Fifth Circuit Court of Appeals on January 16, 2003. (rec. doc. 916). On direct appeal, petitioner argued several claims, including claims that the evidence was insufficient to support his conspiracy conviction, and that proof of the drug quantity alleged in the indictment, that is, over 50 *kilograms* rather than over 50 *grams*, should have been required before the jury could convict. The Fifth Circuit found that petitioner's sufficiency contention, based on alleged inconsistencies in the witnesses' testimony, bias and credibility attacks, was not sufficient to disturb the jury's credibility determination, and therefore, petitioner had not demonstrated that the evidence was not sufficient to allow a reasonable jury to find him guilty beyond a reasonable doubt of the charged conspiracy. The Fifth Circuit also followed circuit precedent holding that "guideline factors that enhance a sentence within the statutory sentencing range do not implicate *Apprendi*." (rec. doc. 916, p. 3).

On April 28, 2003, an Amended Judgment of Conviction was entered to correct a typographical error in the original Judgment regarding the date the conspiracy offense concluded. (rec. doc. 917).

In the instant Motion filed by counsel on behalf of petitioner on April 14, 2004, petitioner sets forth the following claims for relief: (1) that he was convicted of a crime not charged in the indictment (constructive amendment of the indictment) and (2) that he received ineffective assistance of counsel on appeal because his counsel failed to argue

8

that the trial court improperly enhanced petitioner's sentence based on a finding that

petitioner possessed a firearm in connection with his drug activity. In order to avoid the

application of the procedural default doctrine[3] as to his first claim for relief, petitioner

argues that both his trial and appellate counsel were ineffective for failing to raise the

issue earlier. (rec. doc. 926, Memorandum, p. 2). With respect to his first claim for relief,

petitioner seeks reversal of his conviction. Petitioner seeks the reinstatement of his

appellate rights with respect to his second claim for relief. (rec. doc. 926).

Petitioner's *pro se* § 2255 Motion, filed on April 22, 2004, was stricken by this

court by Order dated May 13, 2004. (rec. doc. 935). Moreover, petitioner's Motion to

Amend filed on August 9, 2004, after the government's response to petitioner's counseled

Motion, was denied by Order dated January 5, 2005. (rec. doc. 943).

## LAW AND ANALYSIS

### Scope of Review under § 2255 and Procedural Default

A federal prisoner may collaterally attack his conviction and sentence by filing a

motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Section

2255 provides four grounds for relief: (1) "that the sentence was imposed in violation of

the Constitution or laws of the United States;" (2) "that the court was without jurisdiction

to impose such sentence;" (3) "that the sentence was in excess of the maximum

authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."

---

[3] See *United States v. Shaid,* 937 F.2d 228 (5th Cir.1991) (en banc), *cert. denied*, 502 U.S. 1076, 112 S.Ct.
978, 117 L.Ed.2d 141 (1992).

While this language appears broad, the scope of review is actually narrow. The Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral challenge may not do service for an appeal. *United States v. Shaid,* 937 F.2d 228, 231 (5th Cir.1991) (en banc), *cert. denied*, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992) (citing *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584 (1982)). Following a conviction and exhaustion or waiver of the right to direct appeal, federal courts presume a defendant stands fairly and finally convicted. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir.), *reh. denied* (1998) (citing *Shaid,* 937 F.2d at 231-32); *Frady,* 456 U.S. at 164. As a result, review under § 2255 is ordinarily limited to questions of constitutional or jurisdictional magnitude. *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232; *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468 (1962). Nevertheless, those issues may not be raised for the first time on collateral review without a showing of both cause for the procedural default and actual prejudice resulting from the error. *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232 (citing *Frady,* 456 U.S. at 166.)[4]

      The government argues that petitioner's first claim for relief, that he was convicted of a crime not charged in the indictment, is procedurally barred due to his failure to raise the claim on direct appeal and his failure to demonstrate cause for his default. Petitioner

---

[4]A departure from the cause and actual prejudice test might be warranted in cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Shaid*, 937 F.2d at 232; *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2645 (1986). Hayes does not contest his actual guilt, thus this exception is inapplicable here.

argues, however, that this claim was not presented on direct appeal because his trial and appellate counsel were ineffective.

Attorney error may constitute "cause" for a procedural default; however, the petitioner must show that counsel's actions or inactions amounted to ineffective assistance of counsel. *Cotton v. Cockrell*, 343 F.3d 746, 754-755 (5th Cir. 2003), *cert. denied, Cotton v. Dretke*, ___ U.S. ___, 124 S.Ct. 1417, 158 L.Ed.2d 92 (2004) (citing *Murray v. Carrier*, 477 U.S. 477, 478, 106 S.Ct. 2639 (1986)); *Ortez v. Dretke*, 108 Fed. Appx. 188, 190 (5th Cir. 2004). Thus, "attorney error short of ineffective assistance of counsel" in the constitutional sense "does not constitute cause for a procedural default ...." *Murray*, 477 U.S. at 492, 106 S.Ct. at 2639; *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000). Accordingly, ineffective assistance adequate to establish "cause" for the procedural default of a constitutional claim must be proven in accordance with the principles set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). *See Cotton, Ortez, supra.*

### 1. Prejudice

In the original Report and Recommendation issued by the undersigned, I held that the petitioner had failed to demonstrate ineffective assistance of counsel under the *Strickland* standard, that, accordingly, "cause" for the procedural default by petitioner did not exist and therefore petitioner's first claim for relief was procedurally barred. (rec. doc. 957, p. 11). That holding was in turn based on my holding that since the sentences on Counts 1 and 2 were concurrent, the defendant had suffered no prejudice from his

conviction on Count 1, even if the conviction on that count was constitutionally infirm, because the sentence which the defendant received was within the Guideline range for Count 2 alone. While that statement is true as regards the term of the defendant's sentence of incarceration, it is **not** true as regards the monetary assessment made by the court. The fact that the defendant was convicted on Count 1 subjected him to an assessment of fifty dollars which should not have been assessed if the conviction on Count 1 was constitutionally infirm. The question then becomes whether this additional fifty dollar assessment is "prejudice" under *Strickland*.

Judge Doherty clearly believed this might be the case based on the *Ray* decision. The research conducted by the undersigned leads me to the conclusion that Judge Doherty was correct. In *United States v. Bass*, 310 F.3d 321 (5th Cir. 2002), the court held that *Strickland* prejudice, albeit minimal, was shown by a defendant who, because of his counsel's deficient performance, was assessed an additional fifty dollars on a count which the court reversed, even though his sentence of imprisonment on multiple counts ran concurrently. *Id.* at 330. I find *Bass* controlling here. Accordingly, if petitioner can show that his counsel's performance fell below an objective standard of reasonableness, he will have shown "cause" for the procedural default.

**2. Deficient performance**

To show deficient performance, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." *Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005)

(citing *Strickland*, 466 U.S. at 687). Counsel's performance is deficient only when his

"representation [falls] below an objective standard of reasonableness." *Strickland*, 466

U.S. at 687-688. Thus, to establish deficient performance, the petitioner must show that

"[c]ounsel's conduct falls beyond the bounds of prevailing, objective professional

standards." *Brown v. Dretke*, 419 F.3d 365, 374 (5th Cir. 2005). Reasonableness is

measured against prevailing professional norms, viewed under the totality of the

circumstances.[5] *O'Brien v. Dretke,* 2005 WL 3529255, at 4 (5th Cir. 2005) (citing

*Strickland*, 466 U.S. at 688); *United States v. Molina-Uribe*, 429 F.3d 514, 519 (5th Cir.

2005); *Foster v. Johnson*, 293 F.3d 766, 778 (5th Cir. 2002). "Judicial scrutiny of

counsel's performance is highly deferential ... a court must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance."

*Strickland*, 466 U.S. at 689. Courts must make every effort "to eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,

and to evaluate the conduct from counsel's perspective at the time." *Molina-Uribe*, 429

F.3d at 518 (citing *Stricklan*d, 466 U.S. at 689). Thus, the deficiency prong of the

*Strickland* analysis "is judged by counsel's conduct under the law existing at the time of

the conduct." *Lave v. Dretke*, 416 F.3d 372, 379 (5th Cir. 2005) (citing *Westley v.

Johnson*, 83 F.3d 714, 723 (5th Cir. 1996)).

---

[5]Courts may look at the "norms of practice as reflected in the American Bar Association Standards" when considering the circumstances of the case. *Smith v. Dretke*, 417 F.3d 438, 441 (5th Cir. 2005).

Petitioner was charged, in the indictment, with conspiring to possess with intent to distribute over 50 kilograms of crack cocaine. Petitioner contends that since the indictment charged that amount, that therefore 50 *kilograms* became an element of the offense. Since the court's jury instructions and jury interrogatory allowed petitioner to be convicted on a jury finding of only 50 *grams* of crack cocaine, petitioner argues that an unconstitutional constructive amendment of the indictment occurred and that petitioner was therefore convicted of a different offense from that with which he was charged.

Petitioner cites various cases holding that constructive amendment of an indictment is a violation of the Fifth Amendment guarantee of being brought to court and convicted only after indictment, but cites no authority in support of his specific position here, that is, that the reference in the indictment to 50 kilograms of crack cocaine makes the proof of 50 kilograms an "element" of the offense which must be proven beyond a reasonable doubt and submitted to the jury for determination.

The indictment charges that the defendant conspired to possess with intent to distribute over 50 kilograms of crack cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). In her instructions to the jury, Judge Doherty instructed the jury that in order to convict the defendant on Count 1, the jury had to be convinced beyond a reasonable doubt that the government had proven the following four elements beyond a reasonable doubt:

> "First, that two or more persons, directly or indirectly, reached an agreement to possess with intent to distribute crack cocaine;

Second, that the defendant Isacc Hays knew of the unlawful purpose of the agreement;

Third, that the defendant Isacc Hays joined in the agreement willfully, that is, with the intent to further its unlawful purpose;

And fourth, that the quantity of the controlled substance which is the object of the conspiracy was in excess of 50 grams of cocaine base."

(tr. vol. 3, p. 344-345).

Judge Doherty went on to explain to the jury that:

"The fourth essential element was added pursuant to the ruling in the Supreme Court case Apprendi that I talked with you about earlier. There the Supreme Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. That's the 50 grams here, okay?

(tr. vol. 3, p.346).

In discussing the jury verdict form, Judge Doherty, while exhibiting the form to the jury, said:

"It says, question number 1, How do you find the defendant on the charge alleged in Count 1? Guilty or not guilty?

Then there's a question, if you found the – I mean instruction. If you found the defendant guilty on question 1, answer the following. If not, skip on to question two.

Then it asks, Do you find the conspiracy involved possession with the intent to distribute in excess of 50 grams of cocaine base? Yes or no."

(tr. vol. 3, p. 350).

Counsel for petitioner objected both to the jury instructions and jury interrogatory on the grounds that the jury charge and interrogatory referred to 50 *grams*, the statutory element, rather than 50 *kilograms* as charged in the indictment. (tr. vol. 3, p. 325-326).

The jury returned a verdict of "Guilty" on Count 1, and checked the "Yes" blank, finding that the conspiracy involved in excess of 50 grams. On appeal, counsel for petitioner failed to squarely and cogently present the issue of constructive amendment to the Fifth Circuit.[6]

The basic legal principle is clear: Neither the court nor the prosecutor may change the charge made by the grand jury in the indictment because the Fifth Amendment guarantees that no person shall be held to answer for a felony in federal court except on grand jury indictment. The Fifth Circuit's continued adherence to the teachings of the seminal case of *Stirone v. United States*, 80 S.Ct. 270 (1960) has recently been reaffirmed in *United States v. Reasor*, 418 F.3d 466 (5th Cir. 2005). In *Reasor,* the Fifth Circuit again recognized that *Stirone* requires the court to distinguish between constructive amendments of an indictment which are reversible *per se* and variances between indictment and proof which are evaluated under the harmless error doctrine. An amendment of the indictment need not be explicit to warrant reversal. Constructive amendments also warrant reversal and occur when the defendant is convicted on a factual

---

[6]The undersigned also notes that while trial counsel never expressly stated the objection that the court's action would constructively amend this indictment or cause a fatal variance to occur, the substance of trial counsel's objection to the jury verdict form and the jury charge was that the element which needed to be submitted to the jury was the drug amount set forth in the indictment, not the statutory threshold drug amount. (tr. vol. 3, p. 268). Thus, counsel implicitly made the objection of constructive amendment to the trial court. (tr. vol. 3, p. 319-323).

basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that which was charged. *Reasor,* 415 F.3d at 475. A constructive amendment may be made by jury charge and/or jury verdict form. *United States v. Partida*, 385 F.3d 546, 557 (5th Cir. 2004).

Petitioner here does not argue that he was convicted on a materially different theory or set of facts than that charged in the indictment. Rather, petitioner argues that he was convicted after an essential element of the offense was changed. Specifically, the petitioner argues that the indictment charged him with engaging in a conspiracy to possess with intent to distribute 50 *kilograms* of crack cocaine, but that he was convicted on conspiring to possess 50 *grams* of crack cocaine. Petitioner argues that the amount of the crack cocaine set out in the indictment is an essential element of the offense and that the court's jury charge and verdict form constructively amended the indictment to change (lessen) this essential element in violation of his Fifth Amendment rights.

The issue to be decided here is simply stated: Is the element of the offense of which the defendant was convicted the statutory threshold amount for enhanced sentencing (50 *grams*) or is it rather the amount charged in the indictment (50 *kilograms*)?

If the essential element of the offense is the amount charged in the indictment, a constructive amendment of the indictment took place and counsel was ineffective for failing to raise this issue on appeal. If, on the other hand, the essential element is the

threshold amount set by the statute for an enhanced sentence, no constructive amendment occurred and counsel was not ineffective for failing to raise an issue which would have been rejected by the court of appeals.

Prior to the decision of the Supreme Court in *Apprendi*, drug quantity was a factor for consideration at sentence and was not considered an element of the offense. *United States v. Hare*, 150 F.3d 419, 428 n. 2 (5th Cir. 1998). In *Apprendi*, the Supreme Court held that any fact which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. *Id*. at 2363-2364. In *United States v. Doggett*, 230 F.3d 160 (5th Cir. 2000), the Fifth Circuit held that if the government seeks enhanced penalties based on the amount of drugs pursuant to 21 U.S.C. § 841(b)(1)(A) or (B), the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt. *Id.* at 164-165. This is required because the "default" penalty for violation of 21 U.S.C. § 841(a)(1) is a maximum of twenty years pursuant to 21 U.S.C. § 841(b)(1)(C) and sub-sections (A) and (B) carry harsher penalty provisions.

In *Doggett*, the court recognized that the structure of § 841 is similar to that described by Justice Thomas in his concurrence in *Apprendi*, that is, a "core crime" (here possession of illegal drugs – crack cocaine) which then provides for increasing punishments upon a finding of some aggravating fact, here drug quantities. *Doggett*, 230 F.3d at 164, (quoting *Apprendi,* 120 S.Ct. at 2368).

Specifically, Justice Thomas said:

> "... the core crime and the aggravating fact together constitute an aggravated crime just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an **element** of the aggravating crime." (emphasis added)

*Doggett*, 230 F.3d at 164, (quoting *Apprendi*, 120 S.Ct. at 2368).

Taken facially, this statement by Justice Thomas in his concurrence seems to support the petitioner's argument here. However, it is necessary to look at the context in which Justice Thomas and the Supreme Court in *Apprendi* were speaking. In *Apprendi*, the Court recognized that New Jersey law allowed a defendant's sentence to be enhanced by the factual determination of the trial judge based on a preponderance of the evidence standard. What the Court in *Apprendi* held, and what Justice Thomas in concurring wrote, was that any factor which exposed a defendant to a greater maximum sentence had to be determined by the jury. Justice Thomas referred to the fact which must be determined by the jury as an "element" of the offense.

What "fact" in this case exposed petitioner to the enhanced penalty provisions of § 841(b)(1)(A)? Was it the fact alleged in the indictment, that is, the drug amount of 50 *kilograms*, or was it rather the statutory threshold amount of 50 *grams*? *Apprendi* requires the jury to determine only those facts which increase the defendant's maximum exposure. *Doggett*, 230 F.3d at 166 (citing *Apprendi*, 120 S.Ct. at 2363-2364). Whether petitioner was convicted of a conspiracy involving 51 grams, 50 kilograms or 500 kilograms, his

statutory maximum sentence would not increase. Therefore, the only fact which this jury had to decide under *Apprendi* and *Doggett* was whether or not the drug amount involved in the conspiracy was in excess of 50 *grams* or not. Judge Doherty's jury instruction made that plain to the jury as did the jury interrogatory. Clearly, the statutory threshold of 50 grams was the "element", as that word was used in *Apprendi* and *Doggett*, which the jury was required to determine. It is clear that only those facts which expose a defendant to a higher maximum penalty must be decided by the jury. See *United States v. Lopez-Urbina*, ___ F.3d. ___, 2005 WL 1940118 at 7 (5th Cir. 2005) (*Apprendi* does not apply to increases in a mandatory minimum sentence). If the jury had found that the conspiracy involved 50 *kilograms* as charged in the indictment, petitioner faced no higher maximum penalty than if the jury found (as it did) that the conspiracy involved in excess of 50 *grams*. That being the case, there was no need to submit the 50 kilogram amount to the jury for a factual finding.[7]

The undersigned has been unable to find a Fifth Circuit case directly on point. Counsel for the parties have cited the court to no such case. Several cases are instructive, however. In *United States v. Solorio*, 337 F.3d 580 (6th Cir. 2003), the indictment charged the defendants with conspiring to possess with intent to distribute 5 *kilograms* of cocaine. The jury found the defendant guilty of conspiring to possess with intent to distribute 500 *grams* of cocaine. The defendant argued that the evidence adduced at trial was

---

[7]In fact, the jury may indeed have made that finding. The government's evidence supported such a finding, and the jury interrogatory answer was simply that the conspiracy involved "in excess of" 50 grams.

inconsistent with the terms of the indictment, and that therefore reversal was required.[8]

The court disagreed, holding that neither a constructive amendment of the indictment nor

a prejudicial variance had occurred. *Id*. at 590. Specifically, the court said that no

constructive amendment had occurred because the defendant had not been "convicted of

an offense other than that charged in the indictment." *Id*. at 590. Rather, the court held

that Solorio had been convicted of a lesser included offense. *Id*. at 590. *See also United*

*States v. Vazquez*, 49 Fed. Appx. 550, 2002 WL 31367162 (6th Cir. Oct. 18, 2002), *cert*

*denied*, 123 S.Ct. 1331 (2003) (indictment charging conspiracy involving at least twelve

*kilograms* of cocaine, jury finding the conspiracy involved more than 500 grams but less

than 5 *kilograms* of cocaine did not present a fatal variance or constructive amendment of

the indictment)[9] and *United States v. Martinez*, 430 F.3d 317, 339-340 (6th Cir. 2005)

(constructive amendment of the indictment did not occur where the indictment alleged

greater quantities of drugs than the jury found had been proven beyond a reasonable

doubt).

In *United States v. Arnold*, 416 F.3d 349 (5th Cir. 2005), the defendant was

indicted for his involvement in a conspiracy involving 500 grams or more of a mixture

containing methamphetamine. The court submitted an interrogatory to the jury on which

---

[8]Interestingly, the argument made by Solorio's counsel was that the government "failed to prove an essential element" of the offense charged in the indictment. The Court of Appeals held that this objection adequately raised the issue of prejudicial variance, although awkwardly. *Solorio*, 337 F.3d at 589 n. 7. Essentially this same objection was raised by petitioner's trial counsel here. I believe the objection at trial was sufficient to preserve the constructive amendment argument here. See footnote 6 *supra*.

[9]While this decision is unpublished, the Sixth Circuit in *Solorio* referred to *Vazquez* and cited approvingly the noted language. *Solorio*, 337 F.3d at 590.

the jury found the defendant "guilty" of the conspiracy, but found that the conspiracy involved 456.88 grams rather than an amount in excess of 500 grams as charged. The defendant argued that his conviction must be reversed because (1) a conspiracy to distribute at least 500 grams was charged in the indictment, (2) the jury explicitly found government had failed to prove that amount beyond a reasonable doubt and (3) there was no jury instruction on lesser included offenses. The defendant argued that the jury verdict was inconsistent because the jury verdict both found him guilty of the conspiracy as charged (over 500 grams) and also explicitly found that the government had failed to prove that "element" (over 500 grams) of the charged crime beyond a reasonable doubt. *Id*. at 357. The court disagreed.

The court, construing the jury instructions and the jury interrogatories together, held that the jury had simply found that the conspiracy in which the defendant was a member involved a lesser amount of drugs than that alleged in the indictment, and that, practically speaking, the jury interrogatory constituted a lesser included offense jury charge. *Id*. at 358. While the issue of constructive amendment was not raised in *Arnold*, it is clear that the court did not treat the drug amount alleged in the indictment as an essential element of the offense, the failure of proof on which would require acquittal. Rather, the court treated the drug amount alleged in the indictment as it had said in *Doggett* it should be treated, that is, as an aggravating fact which along with the "core crime" constitute an aggravated crime. *Doggett*, 230 F.3d at 164.

The conclusion that the threshold drug amount in the statute constitutes the "element" which must be submitted to the jury is further supported by Fifth Circuit Pattern Instruction § 2.89 which was endorsed by the Fifth Circuit in *Arnold. Id.* at 356. The Pattern Instruction calls for instructing the jury that in order to convict the defendant of violating § 846 (if the government seeks enhanced penalties under § 841(b)) the overall scope of the conspiracy must involve at least the threshold drug amount in the enhanced penalty provision pled by the government. The Pattern Charge does not treat the drug amount alleged in the indictment as an essential element, the failure of proof on which requires acquittal. This is made clear in the "Note" following the Pattern Charge which provides that:

> Generally, the exact quantity of the controlled substance need not be determined so long as the jury establishes a quantity at or above a given baseline amount in the appropriate subsection of § 841(a).

>        *           *           *

> However, if there is a fact dispute as to whether the amount is above or below a particular baseline (e.g., 100 kilograms of marijuana versus 99 kilograms), the court may consider submitting the higher amount in the fourth element, accompanied by a Lesser Included Offense instruction for the lower amount. Alternatively, the court may substitute for the fourth element a special interrogatory on the verdict form asking the jury to determine the exact amount of the controlled substance. Whatever approach is used, the jury's finding as to the scope of the overall conspiracy establishes the maximum sentencing range.

No lesser included offense charge was given by Judge Doherty in this case; none was requested. That is not the point. The point is that if the drug quantity charged in an indictment is an essential "element" such that an absence of proof as to the quantity charged in the indictment requires acquittal, as is argued by petitioner, no lesser included offense charge would be constitutionally permissible. Since such a charge is permissible and since a conviction on the lesser included offense charge is valid, petitioner's argument that the drug amount charged in the indictment is an essential element must fail. See, *Arnold*, 416 F.3d at 357 (affirming the defendant's conviction for a lesser included offense, rejecting the defendant's argument that his conviction must be reversed because the jury found that the drug quantity alleged by the government in the indictment had not been proven). Rather, the essential "element" of the offense, as that word is used in *Apprendi* and *Doggett,* must refer to the drug threshold amount necessary for enhanced penalties under § 841(b). See *United States v. Promise*, 255 F.3d 150, 156-157 (4th Cir. 2001) ("...the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense ...").

For the same reasons set out above, petitioner did not suffer a prejudicial variance. Petitioner argues that since he was charged with a conspiracy involving 50 *kilograms* of crack cocaine and he was convicted of a conspiracy involving in excess of 50 *grams* of crack cocaine, a variance in proof occurred. First, it is not clear that happened in this case. The jury's answer to the interrogatory shows that it found that the defendant was involved

in a conspiracy involving "in excess" of 50 grams of crack cocaine. The amount alleged in the indictment (50 kilograms) is, obviously, in excess of 50 grams. The government's proof was that petitioner was in fact involved in a conspiracy that involved over 50 *kilograms* of crack cocaine. The jury's answer to the interrogatory, if the jury believed the government's proof, is not inconsistent with the amount alleged in the indictment nor the government's proof at trial.

More significantly, however, petitioner fails to show prejudice even if a variance in proof did occur. Simply speaking, there was no prejudice here, even if a variance of proof occurred. The indictment charged a drug conspiracy to possess with intent to distribute crack cocaine over the threshold amount required for enhanced sentencing. The statutory citation appearing in the indictment gave the same notice. The government's theory and proof all showed petitioner's involvement in the conspiracy. Even if, for the sake of this argument, the government's proof varied in that it showed that petitioner was involved in a conspiracy involving "in excess" of 50 *grams* but less than the 50 *kilograms* charged in the indictment, how did that variance of proof prejudice petitioner? Petitioner fails to show any prejudice, and the undersigned can find none. Petitioner's reliance on *United States v. Nunez*, 180 F.3d 227 (5th Cir. 1995) is misplaced. There the court, while mentioning "variance", actually held that a constructive amendment of the indictment had occurred. Specifically, the court said that, "Nunez rightly argues that the indictment failed

to charge the offense for which he was convicted." *Id*. at 233. That is not the case here.[10]

For the above reasons, if petitioner's counsel on appeal had argued that the indictment was constructively amended or that a prejudicial variance of proof had occurred, that argument would have failed. Counsel is not ineffective for failing to make frivolous objections. *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) (citing *Green*, 160 F.3d at 1037) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness ...."); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (citing *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990)) ("This Court has made clear that counsel is not required to make futile motions or objections."). One court has specifically held that counsel's failure to advance a constructive amendment argument that could not have succeeded is not ineffective. *United States v. Toms*, 396 F.3d 427, 436 (D.C. Cir. 2005).

Accordingly, appellate counsel's performance was not deficient and "cause" does not exist to excuse the procedural default in this case.

## II. Firearm Enhancement

Petitioner asserts as his second claim for relief that he received ineffective assistance of appellate counsel because appellate counsel failed to argue that the trial

---

[10]The only prejudice which petitioner argues is that he was prejudiced by being convicted of a crime different from that with which he was charged. (rec. doc. 926, Memorandum p. 4). No other prejudice is argued by petitioner.

The undersigned agrees that if that had happened here it would be prejudicial, it would constitute an amendment of the indictment and would be reversible, *per se*. For those reasons set out above, however, that did not happen in this case.

court improperly enhanced petitioner's sentence based on a finding that petitioner possessed a firearm in connection with his drug activity when he was acquitted by the jury on the firearm charge, Count 3 of the indictment.

In its response to petitioner's Motion under § 2255, the government submitted a copy of its brief filed in petitioner's direct appeal. The government's brief sets forth extensive argument in response to the following issues raised by petitioner: "Whether the sentence enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) may be applied to a defendant's sentence when a jury had acquitted the defendant of the offense of using or carrying a firearm during and in relation to a drug trafficking offense pursuant to 18 U.S.C. § 924(c)" and "Whether such application of U.S.S.G. § 2D1.1(b)(1) violates the rule of *Apprendi*." Government Brief, at "Issues on Appeal". In that brief, the government argued that "the enhancement for possession of a firearm may be applied even if the jury found the defendant not guilty of violating 18 U.S.C. § 924(c) as it did in this case...[because] [t]he district judge properly used the lower standard of preponderance of the evidence in concluding that this enhancement should be applied to defendant's sentence." Government Brief, at "Summary of Argument". In further support, the government argued that

> "[t]he existence of the indictment constitutes a finding by a
> preponderance of the evidence by the grand jury that
> defendant possessed a firearm as stated in the indictment.
> Though the jury acquitted defendant of this offense the
> district judge is not precluded from applying the enhancement
> because the two-level enhancement is a sentencing

27

> enhancement requiring only a finding by a preponderance of
> the evidence, whereas the conviction of the offense by a jury
> requires a finding of guilt beyond a reasonable doubt.  The
> district judge heard the evidence at trial.  Based on this record
> the finding by the district court is not clearly erroneous."

Government Brief, at "Argument".

Moreover, citing *United States v. Randle*, 304 F.3d 373, 378 (5th Cir. 2002) and

*United States v. Buchanan*, 70 F.3d 818, 827-828 (5th Cir. 1995), the government argued

that *"Apprendi* does not require a finding by the jury beyond a reasonable doubt with

respect to each and every factor which may be used to enhance a sentence within a

statutory maximum."  Government Brief, at "Argument".

Because this court's record did not contain a copy of petitioner's appellate brief,

the undersigned obtained a copy of the petitioner's appellate brief directly from the Fifth

Circuit Court of Appeals.  My review of that brief reveals that petitioner's appellate

counsel did in fact challenge the two level weapons enhancement.  Petitioner denominates

the following as his fifth issue for review by the appellate court: "Whether the district

court erred in enhancing the defendant's sentence by 2 levels for possession of a gun

when the jury found him not guilty of possession of the same gun in Count 3 of the

indictment."  Petitioner's Brief, at "Statement of Issues", p. 2,  ¶ 5.  In arguing this issue,

appellate counsel acknowledged that circuit precedent interpreting *Apprendi* permitted the

trial judge to impose the enhancement under the preponderance of the evidence standard,

but nevertheless argued that in petitioner's case this was unjust as he "suffered an

increase of 2 levels when the sentencing judge found that he possessed a gun during a drug trafficking violation even though he was not guilty of the same charge by the jury in Count 3 of the Indictment." Thus, counsel urged the court to "revisit" circuit precedent and require proof beyond a reasonable doubt. Petitioner's Brief, at "Argument", p. 32-33.

In light of the above, it is clear that appellate counsel did present the issue of the two level weapon enhancement to the Fifth Circuit, arguing the unique circumstances of petitioner's case, namely, that he had been acquitted of the firearms charge by the jury. Thus, the issue was squarely presented to the Fifth Circuit.[11] In its opinion on petitioner's appeal, the Fifth Circuit held that guideline factors that enhance a sentence within the statutory range did not implicate *Apprendi*, relying on *United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000). Thus, petitioner's argument was rejected on appeal. (rec. doc. 916, p. 3).

Moreover, even if appellate counsel had not raised the weapons enhancement issue, counsel would not be deemed deficient; existing circuit precedent at the time of petitioner's direct appeal foreclosed relief. "Counsel cannot be deficient for failing to press a frivolous point." *Phillips*, 210 F.3d at 350 (quoting *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir.1995)). At the time of petitioner's direct appeal, Fifth Circuit case law expressly authorized the lower court's action, notwithstanding petitioner's acquittal on the weapons count. In *United States v. Buchanan*, 70 F.3d 818, 827-828 (5th Cir. 1995), the

---

[11]Admittedly, the issue was not briefed extensively, although it was squarely presented. Given that clear circuit precedent was adverse to petitioner, there was not much that could be briefed.

petitioner argued that the sentencing court erred when it increased her sentencing level under § 2D1.1 where the jury had acquitted her on a corresponding firearms charge. In denying relief, the Fifth Circuit held that "[t]he fact that the jury found [petitioner] not guilty of using or carrying a firearm during a drug-trafficking offense, does not bar the district court from increasing [petitioner's] offense level under § 2D1.1(b)(1). While a conviction requires proof beyond a reasonable doubt, a district court may sentence a defendant within the Sentencing Guidelines on any relevant evidence that has 'sufficient indicia of reliability to support its probable accuracy.'" *Buchanan,* 70 F.3d at 378. The court's findings that a weapon was present on February 20, 1993 and that petitioner had admitted to officers that he was aware the handgun was present in the vehicle are more than sufficient to support the enhancement. (Prejean, tr. vol. 2, p. 138-139; Baker tr. vol. 2, p. 169-170; Bergeron, tr. vol. 1, p. 87-89; PSI ¶¶ 17, 25).

For these reasons, petitioner's appellate counsel was not deficient with respect to the weapons enhancement issue. Petitioner thus has failed to satisfy the first prong of *Strickland.* Moreover, in light of the meritless nature of this claim, even if appellate counsel had not raised this claim, counsel's failure to raise this argument would not have undermined the result on direct appeal, nor would counsel's failure have made petitioner's sentence or conviction unfair or unreliable. *Williamson*, 183 F.3d at 463. Petitioner therefore fails to satisfy the second prong of *Strickland.* Accordingly, *habeas* relief is not warranted with respect to this claim.

**III. Conclusion**

Based on the foregoing reasons, the undersigned recommends that Isaac Jerome Hayes' § 2255 petition be **DENIED and DISMISSED WITH PREJUDICE.**

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.** *Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Lafayette, Louisiana, January 24, 2006.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE